‖ Withers *against* Atkinson.

A witness having testified to what was sworn to before arbitrators by a person who was dead, and having said that his memory had been refreshed since that time by hearing the notes of the deceased witness's testimony read, it was held to be a proper question to ask, whether he had not heard the counsel who took the notes, say on oath, that they were not the notes of the evidence taken before the arbitrators, but made in his own office, of what he expected to prove.

In an action on an agreement for the sale and purchase of land, to recover the purchase money, the plaintiff can not recover, unless he has previously to the commencement of his action tendered a sufficient conveyance of the land.

A purchaser of land, who has given his bond for the purchase money, may retain for incumbrances, or for defect of title, although he has no covenant against incumbrances; but if the incumbrance be removed after suit brought, the vendor may recover, but must pay costs up to the time when the incumbrance was removed, and notice of it to the purchaser.

If a deed be altered after delivery, the alteration destroys the deed as to the party who altered it, but does not destroy the estate. If it contain covenants, the party loses all remedy on them, but the title is not divested. It is the instrument which is rendered void, not the estate.

ERROR to the district court of *Lancaster* county.

This was an action of debt on a bond, dated 1st April 1820, brought in the name of *John Fullmer*, assignee of *George Withers*, against *Ezekiel Atkinson*, and the defence was a failure of consideration. The defendant called *Isaac Bolton*, as a witness to prove what *William* and *Mahlon Atkinson*, who were then both dead, swore before arbitrators on a former trial of the cause; who said, that he could remember the whole substance of the testimony then given by those witnesses, which was, that they were subscribing witnesses to the bond; that the parties said it was for the land sold by *Withers* to *Atkinson;* that at the time the bond was given *Withers* declared that there was no judgment against the land. Upon cross examination the witness said, that his memory was refreshed on the subject of what the *Atkinsons* had sworn before the arbitrators, by having frequently since seen the notes of their evidence, as taken at the time by *George W. Jacobs*, Esq. the counsel of the defendant. The plaintiff then proposed to ask the witness, whether he had not heard *George W. Jacobs*, Esq. admit in court, when examined as a witness, that the only notes he had were memoranda of what he expected to prove, and which were here made in his own office. The defendant having objected to this evidence on the ground that Mr *Jacobs* was alive and competent to testify, it was rejected by the court, which formed the subject of the first bill of exceptions.

The defendant having given in evidence the bond, dated 1st April 1820, and the agreement between the parties for the purchase and sale of the land, dated 13th August 1818; with four receipts of different dates for payments on account of the purchase money, and

[Withers v. Atkinson.]

proof that *Atkinson* had gone into possession of the land in November 1818 ; offered in evidence a deed from *Withers* to *Atkinson*, purporting to bear date the 1st of November 1818, and proof by the justice who drew the same and took the acknowledgement of the grantors and their wives, that it was drawn, executed and acknowledged in the year 1819, and that "nineteen" had been erased and eighteen written upon the erasure, since the deed was executed and acknowledged. This evidence was also objected to, and the objection was overruled and the evidence given. It was also proved that the wives of *John Withers* and *George Withers*, both of whom were grantors, were yet living.

The defendant then gave in evidence fifteen judgments against *John* and *George Withers*, all entered previously to 1819, but all of which were satisfied before the trial of the cause, and some of them after its institution. It was also in proof that *Atkinson* had sold and conveyed a part of the land in 1822. These facts gave rise to several points which were made by the plaintiff and defendant, upon which they respectively asked the court to charge the jury.

The plaintiff requested the court to charge the jury :

1. That the date of the deed and its acknowledgement given by the *Withers* to *Atkinson* is not material ; it takes its effect from *delivery*. If a deed of conveyance has a false or impossible date, or no date at all, it is nevertheless a good deed. If, therefore, the date of this deed was altered before delivery, it is still a perfectly good deed to *Atkinson* against the grantors; and if the deed has been altered by *Atkinson*, or with his consent, since he received it, or before he received it, he has no right to complain.

2. That the deed for the land which defendant has in possession, admitted by defendant to have been received by him on the 1st of April 1820, and kept, and the land held under it by him, (except the part he has sold) ever since, is the fulfilment and completion of the agreement of the 13th of August 1818, as to the conveyance of the land ; and that the covenants in the article of agreement are carried into effect and merged in the deed, and cannot now operate to control or interpret it.

3. The defendant having been in possession and enjoyment of the land from 1818 up to this time, having received a deed for the land, having given the bond in suit for the balance of the purchase money on the 1st of April 1820, and having recorded that deed on the 12th of December 1821, and having sold a part of this land by deed, on the 15th of April 1822, cannot now object to the payment of the bond ; because, he alleges, there were levies, by awards or judgments, at the time the deed was given, which remained undischarged or not removed at the time suit was brought, if they have been removed since.

4. That no liens or incumbrances now remain on this land.

5. That the transactions between men are taken to be fair, and done according to their mutual understanding, unless shown to be

[Withers v. Atkinson.]

otherwise; that fraud is not to be presumed or believed by a jury, without satisfactory proof.

6. That a defendant asking for equity, as a defence against a legal claim, must do equity; that it is *inequitable in a defendant* to ask to be relieved from the payment of his bond for purchase money of land which he had held and enjoyed under his deed for ten years and a half, up to this time, without being disturbed, or even asking for *further assurance,* or other indemnity under the covenants in his deed, merely on account of incumbrances of records which once existed against the lands of the grantors, but which are now and have long since been removed.

7. That the defendant, by his sale by deed recorded on the 15th of April 1822, of fifty-three acres of this land, to his son, has shown by a conclusive act that he did not intend to rescind the contract, and has put it out of his power to replace the grantors in the situation in which they were before the sale.

To which the court answered:

1. A deed takes effect from the delivery. The alteration of the date of this deed, and acknowledgement after the execution of them, if done by the grantor, or at his instance, is a falsification of the deed in a material part. If a deed of conveyance has a false date, or no date, it is, notwithstanding, good. If the date was altered by *Atkinson,* or with his knowledge and consent, he cannot complain.

2. Answered in the affirmative.

3. Answered in the affirmative.

4. If the jury believe that the judgments Nos. 2 and 13 were released, there are now no incumbrances.

5. Answered in the affirmative.

6. Answered in the affirmative.

7. This is for the jury. It is evidence; and, whether conclusive or otherwise, is for them to decide.

The defendant requested the court to charge the jury:

1. That as it is in express proof, that the bond upon which this suit is brought, was given for part of the purchase money of a tract of land, covenanted to be conveyed by *George Withers & Co.* to the defendant, clear of all incumbrances, except only the claim of the commonwealth, it is incumbent on the plaintiff before he can recover, to show that when he brought his suit he was in a situation to comply with the contract on his part, and convey the land to the defendant clear of all incumbrances, agreeably to the terms of the articles of agreement executed on the 13th August 1818.

2. That a vendor is bound to acquaint a purchaser with the incumbrances existing against the estate intended to be sold; and if he neglect to do so, he is guilty of a direct fraud, which vitiates and renders void the contract.

3. That where there has been direct fraud, or the adverse party has acted *mala fide,* the contract is void, and cannot be confirmed by any subsequent declarations or acts by which its fairness is acknow-

[Withers v. Atkinson.]

ledged. Therefore, if the jury believe that *George Withers*, the plaintiff, did not, at the time of obtaining the bond upon which this suit is brought, acquaint the defendant with the incumbrances existing against the land sold, and induced him to execute the bond and accept the deed, by falsely and fraudulently representing that the land was cleared of incumbrances; that there was not a judgment against him under the canopy of heaven; and that the deed was good: that this, *ipso facto*, avoids the bond, and that the subsequent recording of the deed can have no effect in reviving or confirming it.

4. That it is a principle of equity, that the parties to an agreement must be acquainted with the extent of their rights, and the nature of the information they can call for respecting them, or they will not be bound. And, therefore, if the jury believe, that on the 1st day of April 1820, the day on which the defendant executed this bond, he was not acquainted with the existence of the incumbrances against the estate he had bought, and was lulled into security, and prevented from making inquiry, by the false and fraudulent representations of the plaintiff *George Withers*, he is not bound by his contract, and the bond is void.

5. That it is a salutary rule, founded on morality and good policy, and which recommends itself to the good sense of every one, that no man ought to be heard in a court of justice, who seeks to enforce a contract founded in, or arising out of, moral or political turpitude, and if, therefore, the jury believe that the plaintiff, *George Withers*, obtained from the defendant the bond in suit, by the assertion of wilful and deliberate falsehoods, and by palming upon him an erased and altered deed, their verdict should be in favour of the defendant.

6. That an interlineation, if made after the execution of a deed, will avoid it, though in an immaterial part; the parties having no right to make the most trifling alteration after it has been acknowledged before a magistrate, appointed by law to take and certify the acknowledgement, in order that the deed may be recorded; and as it is in express proof, that after the acknowledgement by the grantors and their wives, before *James Black*, Esq. the erasures and interlineations in the deed, and the acknowledgement spoken of by him were made by *George Withers* the plaintiff, or through his instrumentality, that this avoids the deed *in toto*, and as the bond was given for land conveyed by the deed, the consideration of the bond has failed, and the money cannot be recovered.

7. That the rights of *femes covert* can be divested only in the manner pointed out by the laws of the land, and as it has been proved by *James Black*, Esq., the justice before whom the deed given in evidence by the defendant was acknowledged, *Elizabeth* and *Mary H. Withers*, the wives of two of the grantors, are still in full life; that subsequently to its acknowledgement, the deed was altered and erased by *George Withers*, or some one for him: this vitiates the conveyance as to them. And that as *Ezekiel Atkinson* holds the land subject to their rights, no indefeasible title clear of all incumbrances

has been given to him, agreeably to the articles of agreement of 13th of August 1818; and that consequently the consideration of the bond has failed and the plaintiff cannot recover.

8. That as it has been fully proved, that subsequently to the execution and acknowledgement of the deed given in evidence by the defendant, it was materially altered and erased by the plaintiff *George Withers* or his agent; this avoids the deed as to the other grantors; and, consequently, that *Ezekiel Atkinson,* in case of eviction, could have no redress against them upon the covenant of warranty contained in the deed.

9. That as the interlineations and erasures made in the deed by *George Withers* or his agent, subsequently to its execution and acknowledgement before *James Black,* Esq., avoid it as to the other grantors; their legal estate has never been divested, but remains subject to all liens and incumbrances existing against them.

10. That fraud vitiates every transaction; and if the jury believe that the defendant was induced, on the 1st of April 1820, to give his bond by the false and fraudulent representations of the plaintiff, respecting the non existence and removal of the judgments against the land, and the goodness of the deed brought to his house by *George Withers,* and was ignorant of the alterations and erasures in it, or of the effect of them in avoiding the deed as to the other grantors, that this avoids the contract and the money cannot be recovered.

Answer to the defendant's points:

1. The consideration of the bond is the deed of conveyance of the 1st of November 1818, and if at the time of trial all incumbrances are removed from the land conveyed, the plaintiff has a right to recover. The defendant relies upon equity in resistance of the payment of the bond, and if he has sustained no injury from incumbrances, and *now* can sustain none, because they are removed, his defence on this point fails.

2. Answered in the affirmative.

3. If the jury find the facts as stated in this point, the legal consequences follow, that the bond is avoided, and the mere recording of the deed will not revive or confirm it.

4. If the jury find the facts as stated in this point, and that the defendant was prevented from making inquiries, by false and fraudulent representations of the plaintiff *Withers,* the bond is void.

5. If the jury find the facts as stated in this point, the deed is void.

6. If the jury find the facts as stated in this point, the law is as stated therein ; but if *Atkinson* knew of the alterations and erasures in the deed and acknowledgement, and waived making any objection to them, and accepted and recorded the deed, he cannot now set up as a defence those objections to the deed which he voluntarily relinquished.

7. An act of assembly establishes a method by which *femes covert* may convey their estates, or any interest which they have in land, and which, if correctly pursued, effectually conveys the estate or

[*Withers v. Atkinson.*]

interest of the wife. · The signing and sealing and delivery of a deed, by a married woman, does not convey her interest, nor bar her dower, unless she has been separately examined by a magistrate, and a certificate made by him that the requisites of law had been complied with; this certificate, appended to the deed, is the most operative part of the conveyance as relates to the married woman; it is indispensable to the transfer of her interest and estate.    The date of this certificate and acknowledgement was a material component part thereof, and if you believe the date inserted by the justice was erased from the acknowledgement, and another date inserted by *George Withers*, or any one at his instance, the acknowledgement is falsified and avoided, and the premises conveyed by the grantors is liable to the dower of their wives in the hands of *Atkinson* the grantee.

8. If the jury are of opinion, from the evidence, that the deed was altered in the date, after the delivery of it, by *John* and *Michael Withers*, two of the grantors, this avoids the deed as to them, and *Atkinson's* remedy on the warranty, in case of eviction, is gone.

9. Answered in the affirmative.

10. Answered in the affirmative.

The jury under this direction found a verdict for the defendant, upon which judgment was rendered.    The errors assigned here were to the opinion of the court as contained in bills of exception, and in their answers to defendant's points.

*Jenkins*, for plaintiff in error.

The case presented is that of one who purchased land by articles of agreement, gave his bonds for the purchase money, went into possession, received his deed of conveyance, held that possession, and enjoyed the profits of the land for ten years, during which time he sold and conveyed a part of it, and now sets up as a defence to the payment of his bond, that an erasure and alteration were made by the vendor of the date of the deed, subsequently to its execution; and that judgments existed against the land at the time of the sale and delivery of the deed, although it is not pretended that he has been prejudiced to the amount of one farthing, and although those judgments were actually paid and satisfied at the very time the defence was making on the trial of the cause; and all this without offering or, indeed, having it in his power, to reconvey to the vendor, or place him in the situation he was.    If this be an equitable defence, and sustainable only, in any case, upon the principle that he who seeks equity must do equity, assuredly it cannot prevail here.

Where a contract is executed, even in a case where fraud was practised by one of the parties, equity will not relieve unless the parties be restored to their original situation.    1 *Mad. Cha.* 330; *Sugd. Vend.* 480.

The court erred in their instruction to the jury, that it is the duty of a vendee to inform a vendor of the existence of judgments against him.    The concealment of a fact, which any man of common sense

2 F

.[Withers v. Atkinson.]

can discover for himself, is not a fraud ; for it is the duty of a vendee to inquire for incumbrances where they may be found, if they exist. *Sugd. Vend.* 314, 308 ; 2 *Rawle* 90 ; 11 *Serg. & Rawle* 246.

The vendee made no objection to the deed until he was sued for the purchase money, but accepted the same, and held undisturbed possession under it for several years, without any notice to the vendor of a defect in it, or of his having any reason to be dissatisfied with it.    This was an execution of the contract, and the agreement between the parties should not have been received in evidence.    *Cook* v. *Cassel,* 8 *Serg. & Rawle* 268.

The question proposed to the witness, as contained in the bill of exceptions, was to test his credibility and accuracy ; his memory was refreshed by certain notes of evidence ; was it not very important to show, by the same witness, that he was informed from him who made the alleged notes, that they were not notes of evidence at all ? *Norris's Peake* 269.

*Montgomery,* for defendant in error ; who was requested by the court to confine himself to the effect of the incumbrances, and the representations of the vendor on that subject.

The articles of agreement between the parties expressly stipulated, that a title should be made clear of all incumbrances ; and the proof in addition to this is, that the vendor, upon being inquired of by the vendee, declared that there was "not a judgment against him under the canopy of heaven ;" when in fact judgments existed to the amount of 14,000 dollars against him.    This was false and fraudulent.    A purchaser has a right to call for information from a vendor; *Perkins* v. *Gray,* 3 *Serg. & Rawle* 327 ; and if given to him falsely, it is fraudulent ; the mere concealment of it, where the purchaser had other means of information, may not be so.    He is lulled into security, and prevented from inquiry by false representations.    *Duncan* v. *M'Culloch,* 4 *Serg. & Rawle* 483 ; *Cook* v. *Grant,* 16 *Serg. & Rawle* 210 ; *Arnot* v. *Griscomb,* 1 *Ves.* 95; 2 *Page's Cha. Rep.* 390 ; 2 *Kent's Com.* 482.

The deed which the vendor palmed upon the purchaser was false, forged and fraudulent, and was not therefore an execution of the contract.    Upon every principle therefore, this cause depended upon its merits, regardless of the deed, and should have been tried upon the rights of the parties, and the facts as they existed when the suit was instituted.

A witness can not be cross-examined as to an immaterial fact for the purpose of discrediting or contradicting him.    *Buckley* v. *Ellmaker,* 16 *Serg. & Rawle* 72.

The opinion of the Court was delivered by

Huston, J.—I shall content myself with noticing those matters in this long record which are material to the cause trying.    The first bill of exceptions contains matter which, if doubtful, ought not

to continue so.  The witness was called to prove what two persons, now dead, swore before arbitrators in this cause at some time before 1825—1826, when the last of them died.  There had been a former trial of this case in December 1828, at which the same witness had been called to prove the same matters in substance ; viz. that these two persons had sworn, that at the time their father accepted the deed and gave the bond in question to *Withers*, he, *Withers*, had said there was not a judgment against him under the canopy of Heaven.

The witness at this trial was admitted, upon his swearing that he could remember all that the deceased witnesses had sworn.  After his examination in chief, he, on his cross-examination, said, " I do not remember that, at a former trial, I testified, as now, on there being no judgments against *Withers ;* but I remember now they did testify that before the arbitrators."  After some more questions, to which he answered, he did not remember what any other witness than the two deceased swore, he said, " the reason why I remember what the *Atkinsons* swore and not the others, they were my neighbours, and frequently heard them mention it over since.  The matter which principally strengthened my memory since is *George Jacobs's* notes, which I have seen frequently since ;" and again, says, he saw *Jacobs* taking notes at the arbitration, and believes *Jacobs* took notes of all the evidence, &c. ; that he saw those notes in *Jacobs's* office.  The plaintiff then offered to ask the witness, Did you hear *George Jacobs* admit in court, when examined as a witness, that the only notes he had, were memoranda of what he expected to prove, made by him before the arbitration ?  The defendant objected ; the court overruled the question, and exception taken ; and this decision is attempted to be supported by saying *G. Jacobs* was alive and could have been sent for and examined.  Most clearly the question should have been put.  Mr *Jacobs*, or somebody else, had shown those notes to the witness, who had frequently read them, and impressed their contents on his memory, under a belief that those were notes of what the witnesses swore before the arbitrators, taken down at the time of swearing; but if Mr *Jacobs* had afterwards said much more, if he swore at the former trial of this cause that he had no notes of what witnesses swore before arbitrators, it would show that the witness had been shown as notes of testimony, writings which were no such thing ; and if he did hear Mr *Jacobs* swear in 1828 that he had no notes, it is strange that he did not recollect it, when something purporting to be notes of the evidence was shown him, and more strange, that he would persist in calling them what he heard Mr *Jacobs* swear they were not.

But as the cause goes back, it is important that an opinion on the whole subject should be given.  It is not, as a general rule, true, that a man called to testify what witnesses, sworn at a former trial, said, can refresh his memory by what a third person, or the witness himself, has since told him was sworn.  He is called to testify, and can only be admitted to testify, what was said on oath in court ; he can

[Withers v. Atkinson.]

not substitute for this what has since been said by the same person when not under oath, or said by any other person not under oath. The witnesses were dead before the former trial in 1828; he could have no conversations with them since their death, and his memory was not refreshed by any such means, he therefore says, his memory was principally refreshed by Mr *Jacobs's* notes, which he has seen frequently since. This is worse than the other. A witness cannot be permitted to refresh his memory by notes or memoranda made by any other person than himself, except perhaps in a case, where he looked over the writer, and saw at the time that what was written was written correctly; or where he, immediately after it was written, read it over and found it correct; and where he can positively swear, that the paper to which he refers to refresh his memory is the very one he saw written, or which he read immediately after it was written; and I make these exceptions with a *perhaps.* That matter is not before us, and not agreed; but it is out of the question, that a man who sees another taking notes of testimony shall be heard to testify what he did not remember until he read those notes. Where a man who took notes can refresh his memory by referring to them, or where he can read them, is settled by decisions of our own courts; but there is no decision, no principle, and I believe no *dictum,* that a man may in a case like the present refresh his memory by reading what was written by a third person, and not seen by the witness for years after it was written. If then this testimony had come out before the witness was examined in chief, he ought to have been rejected; and coming out afterwards, the jury ought to have been told to disregard it totally.

The next two bills of exception are taken without any cause. The agreement between the Messrs *Withers* and *Atkinson,* was made in 1818. The articles of agreement drawn by *G. Withers,* contain as full and fair covenants as can be devised. The agreement continued open till April 1820, *Atkinson* having taken possession in November 1818, and making partial payments every two or three months. It must then be perfectly immaterial in this stage of the cause, and in every other, whether the contract commenced in consequence of *Atkinson* proposing to purchase, or in consequence of *Withers* proposing to sell; and it must be equally immaterial whether *Withers* advised *Atkinson* to purchase, or did not advise him; and yet these are made the subject of two bills of exceptions.

Before I come to what is called the important point in the cause, it must be understood that Mr *Black* was employed to survey the land and draw the deed, and did both. He was offered to prove, that since the deed was executed, an alteration had been made in the date of it; or, in other words, to prove that it was drawn and executed in the year 1819, whereas, it now purports to have been executed and acknowledged 1st November 1818. This testimony was objected to, but admitted and exception taken. It was rightly admitted; he was the scrivener who drew the deed; one of the subscribing witnesses to it, and the justice of the peace before whom it was acknowledged. The

evidence, when admitted, was most unsatisfactory; he was twice examined; he swore positively that the deed was drawn and executed in 1819; but on what day, or even in what month, he could not tell. There were three grantors, *Michael Withers, George Withers* and wife, and *John Withers* and wife. The parties lived ten or twelve miles apart, and he took the acknowledgement of *George* and wife on one day; *John* and wife on another day, and *Michael* at a different time and place: yet the acknowledgement was but one, and purported to have been all of the 1st of November 1818. *John Fullmer* was the other subscribing witness, and rode round with him, and saw all of them acknowledge as well as the justice did. I do not say there was really any thing wrong or very uncommon in this; a different course, however, might have been taken. *Atkinson* was not present, and the deed was not then delivered to him; it was delivered to him on the 1st April 1820, when he paid some more money, and gave the bond on which this suit is brought. In drawing the deed, the scrivener had left a blank for the day and month. As the deed was, these were filled with 1st November; and at the examination he thought this was done in the deed by *G. Withers,* and in the acknowledgement by *J. Fullmer,* and this at the time the deed was executed. Afterwards, he was called again, and says, " I cannot say precisely when the deed was acknowledged, except from the date in the deed. The reason why I believe the date in the deed was altered, was because I have never been in the practice of antedating any deed which has been executed by me. I am under the impression the deed was left blank, it was not dated 1st November 1818: as respects the year, I have no doubt; it was in the year 1819 it was executed." Immediately after, he says, "I have thought on this matter, and have endeavoured to recollect the truth; the word ' November' was written at the time I drew the deed, and not at the time I took the acknowledgement;" and again he says, " the date in the acknowledgement was filled up by *Fullmer* at the time I took the acknowledgement."

It was apparent the letters " eigh," in the word eighteen, were written on an erasure. This was not discovered at the trial of this cause before arbitrators, nor till five or six years after the commencement of it. Many men of more experience, and as careful as Mr *Black,* have witnessed deeds and taken the acknowledgement of the grantors and their wives, without ever looking at the date of the deed; and it was no imputation on his integrity that he did not look at it; nor was it any imputation on his memory, that in 1830 he could not recollect all that he knew in 1819. I shall show that this matter was not so material as seems to be supposed by the complainants. It was assumed, but without very conclusive evidence, that the word *nineteen* had been changed to *eighteen* in the date of the deed, since the execution and acknowledgement, and that it was done by *G. Withers,* or by *Fullmer,* who was in his employ. Now the only proof was, that *Fullmer* had been in *Withers's* employment some years before. *Fullmer* was dead before this discovery was made. When

[Withers v. Atkinson.]

*Atkinson* was able to pay what he had agreed as the first instalment, viz. 1st April 1820, the deed was given to him, and he gave his bond for the residue of the purchase money; soon after he took the deed and had it recorded; it was then as it is now.

The first witness, on whose admission I have commented, swore that at the trial before arbitrators, two sons of the defendant were examined, and proved that when *G. Withers* brought the deed to their father on the 1st of April 1820, and when defendant executed this bond, *G. Withers* said there was not a judgment against him under the canopy of heaven; and there were many judgments against him, as appears by the records produced; though it was admitted none of them had ever been levied on this land; and also, that before the trial all were paid and satisfied.

On the other hand it was proved, and at length admitted, that *George Withers*, at the time the deed was delivered and the bond given, did tell *Atkinson* there were two large judgments against him, and also delivered to *Atkinson* a release of the tract in question, from the lien of those judgments. Every thing was denied, and testimony given after a very tedious trial, proving all alleged on one side, and the other, if believed.

As is the custom here, certain propositions were stated to the court, on which they were requested to lay down the law to the jury.

The first point made by defendant's counsel was rightly abandoned here. The law on that subject is settled by this court in *Cassel v. Cook*, 8 *Serg. & Rawle* 293, and many other cases. Where the suit is on articles of agreement, before deed delivered and bonds given for the purchase money, before the plaintiff can demand the money or recover the penalty in debt for the money, it behoves him to tender a good and sufficient conveyance. It is different after a deed is delivered and accepted, and a bond is given for the purchase money, which is itself at law a consideration; and where the obligor must go into equity for relief, if the consideration has failed, or the contract has not been complied with.

The second, third and fourth points are in substance the same, and assert that the vendor is bound to acquaint the purchaser with incumbrances; and if he do not, or if he informs him falsely, he is guilty of a deceit: that if the vendor states an untruth as to this matter, the contract is void, and cannot be confirmed by any subsequent declarations or acts by which its fairness is acknowledged; and if this was the case here, the facts, that *Atkinson* took possession of the land, has enjoyed it ever since without molestation from any one, and has sold part of it, do not alter the case, or make him liable to pay the purchase money.

There is no subject on which we find so much in the law books as the fairness of contracts; and if we were to judge from their arguments in court, no subject on which men of talents and learning have such vague and strange opinions. The above is a fair statement of the positions laid down in this cause: which seem to blend the

case, where a man, who has been guilty of fraud in making a contract, seeks to carry into effect such fraudulent contract, without rectifying or allowing for the advantage he has obtained; with cases where the contract has afterwards been completed by both parties, and where the defect complained of was remedied and removed by him who concealed it before the other suffered from it, nay, before he knew of it. It seems also to blend the cases under and within the statute of fraudulent conveyances, which declares deeds within its provisions utterly void and of no effect against creditors, with frauds in other cases, in which Lord *Coke* tells us, the common law rectifies what is amiss and leaves the rest as the agreement left it. I certainly do not intend to be the apologist of fraud or misrepresentation in contracts, or in any situation in life; but, except in this and the two adjoining counties, I have never heard it contended, that if a man in selling a tract of land made any wilful mistatement repecting it, although no injury has resulted to the vendee, that he thereby forfeited his tract of land, and that the right to it at once vested in the person to whom he stated the falsehood, without the payment of any purchase money. When a contract is avoided for fraud, it is avoided throughout; it is as if it had never existed; and the property is in the vendor as if no such contract had ever been made; and the vendee if he has paid money recovers it. This applies to contracts not completed, more generally than to those which have been carried into effect; and there are very few instances in which it can be applied to cases in which the purchaser has received the possession and cannot restore it to the vendor. In such case the purchaser is compensated by recovering damages for the injury he has sustained from the misrepresentation. Without attempting to write a system upon conveyancing, and upon the effect of fraud on contracts executory or executed, I will refer to a few authorities and principles which will settle this case. In the first place, the books are full of distinctions between defects and incumbrances on an estate which are secret, and those which are open and palpable, which a purchaser can discover, if he will look for them, and the difference between the register counties in England and the other counties, in the former of which the purchaser can find all or nearly all possible incumbrances. *Sugden* states, that although the vendor or his agent states there are no incumbrances, or none but such as he has given a list of, yet it is proper to search for judgments and mortgages immediately before the deed is executed. *Sugd. Vend.* 302. Next he tells us, if an incumbrance be discovered before the deed is executed and delivered, and the purchase money paid, the vendor must discharge it, if the vendee so insist, whether the purchaser has or has not agreed to covenant against incumbrances; or the vendee may refuse to accept the deed, and in case of false representations may recover any expenses incurred in the course of the purchase. *Sugd. Vend.* 312. Or if he has accepted the deed, the purchaser, if he has not paid, may retain the purchase money until the

incumbrance is paid off.   *Sugd. Vend.* 312.   So if the purchaser had
paid the money, but deeds are not completed, he may refuse to ac-
cept the deed, or to enter on the land, or if he has entered,  may re-
store the possession and sue for his money ; and this though he was
not entitled to a covenant against the incumbrance discovered ; but,
if the deed has been executed, and the money all paid, and the cove-
nant in his deed do not extend to the incumbrance as a defect of
title, he is without redress.    If the covenants do extend to it, his
remedy is on them.    The writer then discusses a point immaterial
in this country,  viz.  whether, after having accepted the deed and
given bonds, the purchaser can retain for incumbrances not discovered
by him, and  against which  he has no covenants ; and he comes to
the conclusion that he cannot at present in England, unless he can
prove that the vendor knows of the incumbrance or defect ; and then
he may recover compensation at law by an action on the case, or have
relief in equity.    But there is no intimation there, or any where else
that I know of, that the damages at law or the relief in equity is more
than compensation for the injury ; and of course, if no injury, as in
this case, where the vendor paid off the incumbrances before any in-
jury was sustained, nay, so far as we know, before he was threatened
with injury, the compensation would be what the injury was, that is,
nothing.

I have said that this discussion is not material here ; because it is
now settled in this country, as it was formerly in  England, that the
purchaser may retain for incumbrances or for defect of title, where he
has not paid the purchase money, even though  he has given bonds
for it.   See *Steinhauer* v. *Witman,* 1 *Serg. & Rawle* 438, 447.   *Hart*
v. *Porter,* 5 *Serg. & Rawle* 204. · This last case has settled also
what ought to have governed this case on this point, viz..that until
the incumbrance is removed, the purchaser may defend himself,
though he has no covenant against incumbrances ; but, that if the
incumbrance is removed after suit brought on the bonds of the pur-
chaser, from that time it ceases to be a defence to the purchaser, and
the vendor can recover on his suit, but must pay the costs up to the
time when the incumbrance was removed, and notice of it to the
purchaser.    This case has been repeatedly recognized since.    I
shall notice the alleged dower in the wives of *John* and *George
Withers* hereafter.

The fifth, sixth, eighth, ninth and tenth points relate to the alter-
ations alleged to have been made in the deed ; as does also the
seventh, which I shall notice separately.

These points, in substance, amount to this ; that any alteration in
a deed avoids it, without inquiry who altered it, if the alteration is
made after acknowledgement before a justice, though before delivery ;
and in an immaterial point, still it avoids it, and releases the defend-
ant from payment of his bond ; that the alteration by *George Withers,*
or by his procurement, avoids it, as the deed of *John* and *Michael
Withers,* and *Atkinson* would have  no  remedy against them on his

warranty; that the alterations leave it subject to all liens to this day against *Michael* and *John Withers;* and that the delivery of such altered deed to *Atkinson* was a fraud, and discharged him from all liability to pay his bond.   This is a full summary of the points, except that the counsel request the court to state that the facts, as well as the law, are as they state them.

The subject of alteration of deeds is a wide field, into which I do not propose to enter further than this case requires; because the only evidence that this deed was altered, as to its date, is, when fairly examined, no more than just this; that Mr *Black* at that time did not look at the date in the deed, or if he did, he does not now remember it; and his impression is, that if he had seen the date he would have objected to it; and because, in the view I shall take of this matter, it has little bearing on this cause.   I shall say, that I approve of the modern cases, which do not destroy a deed because the mice have nibbled off the seal, or because accident has defaced a part of it, or fire or water destroyed it.   We have provision in our laws for supplying the loss of a deed.

I also argue that the courts ought so to decide, that every man who is a party to a deed should be deterred from any alteration in it after it has become a deed, by *making it void, as to him who altered it, and leaving it effectual to vest the estate of the other party.*   In short, that when a jury find that one of the parties has altered a deed, after it became effectual by delivery, he shall never support a suit on that deed.   But that, although the deed is altered after delivery by the grantor, and although he thereby loses all benefit of the covenants contained in it, still the alteration does not vest the estate in the grantor.   This doctrine is not only well established by ancient and modern authorities, but consonant to reason.   If the owner of a deed alters it in any way, it becomes void as to him.   *Pigott's case,* 11 *Co.* 27; *Shep. Touchstone* 57, 68, 69.   The modern cases say, an alteration by a stranger, though material, will not have this effect; *Jackson* v. *Malin,* 15 *Johns.* 297; *Rees* v. *Overbaugh,* 6 *Cowen* 746.   But altering the deed by the grantor operates not to divest an estate which has passed by it.   " A deed of revocation, and a mere deed of settlement by that deed, though after the sealing and execution blanks were filled up in said deed, and deed not read again to the party, and not resealed and executed, yet held a good deed."   *Paget* v. *Paget,* 1 *Rep. in Cha.* 410.   I have quoted the whole of this case, and I understand it as deciding the deed good to pass the estate; it is so understood by the annotator to *Co. Lit.* 225, 226, and is the case there referred to as being in 1 *Rep. in Cha.* 100; but at page 100 there is nothing on that subject.   And in more modern times, in *Hatch* v. *Hatch,* 9 *Mass. Rep.* 311, we find the same doctrine; and *Lewis* v. *Payn,* 8 *Cowen* 71; and the cases there cited, some of which I have examined, and others I could not, at this time.   I establish this position, that if a deed be altered after delivery, the alteration destroys the deed as to the party who altered it, but does not destroy

2 G

the estate.   If the deed contain covenants, the party altering it loses all remedy on them ; but the title is not divested.   I omit the distinction, taken in *Lewis* v. *Payn*, as to incorporeal rights which lie in grant, and estates passing the realty, as not material here.   In that case there were counterparts, each executed by both parties, one of whom altered the part in his possession, and would have lost all remedy on it if that had been the only deed, but his right was saved by the other deed, which remained unaltered.

It would indeed be strange, if the grantor of a tract of land could make the title void as to the purchaser, by altering the deed after execution, and before delivery, so that it would pass for nothing, and leave the land for his heirs or creditors, after he was paid for it ; and this in consequence of his own act.   If it contained covenants in his favour, he would lose all benefit from them ; but it does not revest the estate in the grantor, nor take from the purchaser the benefit of any covenants in his favour.   So if the purchaser alters the deed after it is delivered to him, he loses all benefit from the covenants in his favour; but it does not destroy his title, or revest the estate in the grantor.   The case in 8 *Cowen*, just cited, is full to show that *it is the instrument altered* which is rendered void as to any benefit to be derived to the party who altered it ; and that, where he has no other evidence to support his claim than the altered deed, he could not recover, having by his own act destroyed the evidence of his own demand ; but that if he has other evidence of his claim, besides the deed he has erased, or to which he has made an addition, he may recover on that other evidence.   There the landlord had altered the lease by a material addition, and would have failed in recovering the rent claimed on that lease, in that suit, but for the production of the counterpart by the tenant.   The common pleas decided that he had lost his rent entirely ; the supreme court corrected that decision, and said he could recover on the counterpart.   And the principle of that decision, and of all the cases cited, is, that even admitting the date to have been changed after the execution and acknowledgement, but before delivery, the alteration does not affect the estate of *Atkinson* the purchaser ; and that the alteration of the deed does not avoid any other instrument relating to the same estate, except the identical one altered.   The bond then remains as good as ever, and ought to be so ; if the estate of *Atkinson* is unimpaired, why should he not pay the purchase money ?

But it is said the alteration by *George* avoids it as to *John* and *Michael.*   Now *George* was either their agent, entrusted by them to keep and deliver the deed, in which case his act is their act, and will no more avoid the deed as to them, or prevent the estate passing from them, than from passing from himself.   Or he was not their agent, and not entrusted by them, in which case it is an alteration by a stranger, as respects them, and the alteration will affect no one; especially as, under the circumstances of this case, it was a perfectly immaterial alteration.   This view of the case makes it unnecessary to

[Withers v. Atkinson.]

say whether—as a deed passing land has no validity until delivered, and is, until delivery, of no value, and has no effect or operation—it may not be altered by the grantor at any time after execution and before delivery; and whether, if this were fully proved, it would have any effect on the validity of the deed for every purpose. Some of the cases cited seem to put it on being an *alteration after delivery,* and as it is no deed until delivered, I see no reason why the law should not be so; but the point was not argued—is not necessary to be decided, and I choose to give no opinion on the subject.

It remains to notice the seventh point proposed to the judges, as to the effect of the alteration, if made after the acknowledgement on the estate and interest of the wives of *John* and *George Withers.* The deed, independent of their acknowledgement, does not pass the estate of the wives; if it is not as it was at the time of the acknowledgement, then it is not the deed they acknowledged, and their estate would not pass. This I say in consequence of the case in *Burrow's Reports.* If it were not for that case, I could not find any very good reason why—if the land, and consideration, and estate granted, continue the same, and these are the only matters material in their examination which ought to be known by them, or made known to them—their estate should not pass, by reason of an immaterial alteration unknown to them; but I am contented that case may stand as an authority, and in this respect there was a defence to the bond. But by the decision of *Hart* v. *Porter, 5 Serg. & Rawle,* before cited, and since repeatedly recognized, the plaintiff, on procuring new deeds of release, by *John* and *George,* and their wives, duly acknowledged, and delivering them to the defendant, can recover in this suit, on paying the costs up to the time of delivering the release; or he may discontinue, and, after delivering such releases, recover in another action on the bond.

The law on the effect of misrepresentation as to incumbrances, and as to the effect of the alteration, even admitting that it was made by *G. Withers,* or by *Fullmer* at his instance, was not correctly stated, as applied to the facts of this case.

Judgment reversed, and a *venire facias de novo* awarded.