## Rifener *versus* Bowman *et al.*

1. If a grantee of land alter or destroy his title deed, his title to the land is not gone, but the estate remains in him until it has passed from him by some mode of conveyance recognised by law. The instrument is made void, not the estate.

2. In an action of trespass q. c. f. of unimproved land, if the *locus in quo* was not within the lines of the plaintiff's deed, he had neither constructive nor actual possession and could not maintain trespass whether the defendant had title or not, it was therefore immaterial whether the defendant's deed had been destroyed by alteration or not.

3. In official surveys of vacant land, the lines on the ground constitute the true survey; rejected lines prove nothing and should be obliterated; more so in erroneous lines run in an effort to make an equal division of his land by a father between children.

4. If the courses and distances in the deeds from the father made an equal division and the lines on the ground did not, the jury might presume that some of the lines first run were rejected, and those in the deed adopted.

5. Where one of the distances in the deed differed from the plot of the survey from which the deeds were drawn, the jury might correct it by the survey.

6. To maintain an actual possession of woodland as such, it is indispensable that the intruder take actual possession by residence or cultivation of part of the tract to which the woodland belongs; occasional trespasses to take timber constitute no possession under the statute.

ERROR to the Court of Common Pleas of *Westmoreland county*.

This was an action of trespass *quare clausum fregit*, by William Rifener against Adam Bowman, Henry Hilty and Adam D. Bowman. The pleas were "Not guilty" and "*Liberum tenementum*." The contest was as to the ownership of eight acres of land, which had not been cleared or fenced, of which John Kuhns claimed to be the owner, and which he had leased to Rifener, the plaintiff: the defendant entered on the land and cut timber, which was the trespass complained of.

In 1813 Philip Kuhns was the owner of a tract of about 500 acres. Jacob Kuhns was a son, and Adam Bowman, one of the defendants, a son-in-law, of Philip. From the evidence, it appeared that James Murry, the county surveyor, on the 1st of June 1813, at the request of Philip Kuhns, made surveys dividing this tract of land into two parts, one to be for his son Jacob, and the other for Bowman. After lines had been run and a calculation made, the surveyor found that too much would fall to Jacob's part; the lines were again run till the tract was equally divided. Jacob and Bowman both lived on their respective parts at the time of the division and afterwards. On the 28th of February 1822, shortly before the death of Philip, he made deeds to Jacob and Bowman for their respective tracts, each calling for the other as an adjoiner, and in both deeds the survey of Murry was referred to. On the draught of Murry one of the outside lines of Bowman's tract was *south 56 degrees*

[Rifener *v*. Bowman.]

*east*, 95.6 *perches ;* the corresponding line in the deed to Bowman was stated to be 25.6 *perches*, as appeared from the *record* of the deed.    There was evidence that Jacob Kuhns's cattle ran on the land ; that he used to take timber from it ; that Jacob claimed it ; that Bowman offered to buy part of it ; that Jacob offered to give part of it for a schoolhouse, &c., &c.

Jacob died in 1860, and upon proceedings in partition of his land, in making the survey a line with marks was found, which, if a line of the division, would give the *locum in quo* to Jacob's tract, but would not correspond with the survey made by Murry in 1813.    Jacob's land was adjudged to his son John on the 19th of August 1861, and in September following the alleged trespass was committed.

At the trial the plaintiff gave in evidence the deed from Philip Kuhns to Adam Bowman, produced by the defendants on notice, in which it appeared that the *length* of the disputed line (S. 56 degrees E.) had been blotted out.

The plaintiff submitted a number of points.

The points and answers are as follows :—

1st point. The erasure and alteration of the deed of Philip Kuhns to Bowman, if wilfully made, rendered the whole deed a forgery, and the defendants cannot protect themselves under it or any copy of it, although one of record.    After such alteration and erasure the deed cannot be used as evidence, and it will be the duty of the jury to disregard it.

Answer : " The fraudulent alteration of a deed after delivery, in a material part, avoids it, and it cannot be used as evidence.    But the evidence on which the defendants rested in the present case was the record of the deed which contained no erasure, nor appearance of it.    The original deed was introduced by the plaintiff himself.    By our Acts of Assembly the record of a deed is made equally admissible as evidence with the original.    The alteration of a deed does not destroy the estate, nor operate as a forfeiture, but only affects the evidence of title, and if the party has legal and genuine evidence of title, as a regularly recorded deed, the fact that the original may have been altered after it was recorded does not affect the record of it.    For these reasons the point is answered in the negative."

2d point. When the marked lines on the ground differ from the plot or survey, the lines as found on the ground must be taken as the true lines of division.

Answer : " This point is answered in the affirmative, if the marked lines on the ground were the lines of the survey.    But the lines marked upon the ground before completing the survey may be abandoned, and a portion of the land included within the lines left out, and the draught made to conform to such alteration, and if such were the case, and the parties so treated it, and the titles

were made accordingly, the right would be governed by such alteration, notwithstanding marked lines were made upon the ground, and still subsist. The proper course for a surveyor in such case, if he has included too much land, was to have gone over the land again, obliterate the old lines and make new ones; but the law does not require that such care should have been used. Whether there was such abandonment of a part included within by the marked lines and the length of the line, redrawn from 56 to 33, was done designedly, is a question of fact for the jury, and if the jury believe it was so altered, then the marks on the ground would not be the line of survey as finally settled, but the survey as so altered and reformed."

3d point. A prior possession and occupancy of the land by Jacob Kuhns, and the plaintiff who succeeded him, is all that is necessary to enable the plaintiff to maintain this action.

Answer: " Possession, actual or constructive, is necessary, and is sufficient to sustain trespass. If the plaintiff had not the possession of the disputed part, the action cannot be maintained. The part in dispute was not cleared nor cultivated, nor actually occupied by either party, and in such case the constructive possession is in the party having title. If Kuhns had the right and title, he can maintain this suit; if this land were within the deed to Bowman, then he would have the actual possession as connected with his general occupation, and the plaintiff must fail. Whether it is within the deed of the one or the other is for the jury."

4th point. If Jacob Kuhns and John Kuhns, his successor, used and occupied the land in dispute, as their own, for a period of twenty-one years before the trespass, claiming it all the time to be their own, that would give them an indisputable title to it by the Statute of Limitations.

Answer: " If the land was not in the Kuhns deed, then this point contemplates the acquisition of title under the Statute of Limitations. To constitute such right there must be actual, adverse, continued and exclusive possession for twenty-one years. If the land in dispute, in the judgment of the jury, was not originally in the Kuhns deed, but was within Bowman's deed, has Kuhns proved such a possession as gives title by the statute? This is not the case of overlapping surveys where both include it; it is either in the one or the other, but not in both. There was no part cultivated, no clearing on, no actual or visible possession nor exclusive occupancy by either. In such case the possession was incident to the title. There is nothing, therefore, to sustain the statute, so far as regards acts on the ground, and the only ground would be a constant assertion of actual possession as part of his farm on the part of Kuhns, and constant disclaimer of title by Bowman for the whole space of twenty-one years. In such case loose and unsatisfactory declarations and

mere claims of right are not sufficient. Where the effect is to take away a man's title, the evidence ought to be of a satisfactory character. The claim of Kuhns under the statute, and the fact that Bowman disclaimed, seems to me to be slight, but it is for the jury. Without such constant assertion of right, coupled with acts of ownership on one side and constant acts of disclaimer on the other for the whole period of twenty-one years, there is nothing in the fact of this case to make title under the statute."

5th point. There is no evidence that Bowman claimed the land in dispute until the time the trespass was done, and his deed from Philip Kuhns, according to the courses and distances therein mentioned, does not embrace it.

Answer: "Whether Bowman's deed embraced the land in dispute is for the jury; so also the fact of whether he claimed it, or rather whether he disclaimed it."

*H. P. Laird*, for plaintiff in error.—The two deeds called for the respective tracts as adjoiners, which could not be if the length of the lines in them were to control; only one possible length added to each would have made the tracts adjoin, would leave all other parts of the description unaltered and bring them to the well-marked division-line contended for. Under these facts it was for the *court* to say which of the deeds embraced the land; it was the construction of a writing. Murry's surveys also were writings and to be construed by the court, and the survey was to be corrected by the marks on the ground.

But the plaintiff had title by the Statute of Limitations. Kuhns claimed the land for thirty years and used it as other farmers do. It is true when the owner of the better title is in possession, it extends by construction over his wood-land, and he cannot be ousted but by some actual occupancy: Ament *v.* Wolf, 9 Casey 331. But where the person having the better title, although in actual possession of a part of a whole tract, confesses that a particular part of the land included in his survey is not in his possession, and that he does not claim it, and the owner of the adverse title claims it by marked lines on the ground, as part of his land, on which he also has an actual residence, and uses it as part of his farm, then there is no room for the doctrine of constructive possession in reference to the owner of the better title. He admits the disseisin.

The defendants could not protect themselves under Bowman because of the alteration of the deed: Kerns *v.* Swope, 2 Watts 79; Vickroy *v.* McKnight, 4 Binn. 212.

*H. D. Foster*, for defendants in error.—The court fairly submitted to the jury where the true line was.

The deed affected the *evidence*, not the *title*. If the defend-

ants' evidence was destroyed it did not vest it in the plaintiff. If the marked line were made for a survey it would control; otherwise, not. This was a question of fact, and the jury has determined that it was not a line.

As to the statute, both parties were in actual possession of their respective parts; neither had cleared or fenced the land.

In Ament v. Wolf, 9 Casey 331, the only principle decided was that one living within the bounds of his own survey, having actually cleared, enclosed and cultivated a portion of land within the lines of another survey, for twenty-one years, claiming all the time up to marked lines, could hold up to the lines within which he had cleared and occupied for the statutory period. Here there was no clearing, enclosure or cultivation: Hole v. Rittenhouse, 1 Wright 116; s. c., 1 Casey 492.

The opinion of the court was delivered, January 7th 1867, by

WOODWARD, C. J.—The subject of controversy was eight acres of unimproved woodland, which both parties claimed under deeds from Philip Kuhns, the former owner of a tract of nearly five hundred acres. Philip Kuhns undertook, in 1813, to divide the tract equally between his son, Jacob Kuhns, and his son-in-law, Adam Bowman, and for this purpose he employed James Murry, the deputy surveyor of the county, to run and mark the necessary lines. It would seem from the testimony delivered on the trial below, that Murry's lines, as first run, did not make an equal division, and that he and the parties went back upon the land and ran off till it was equally divided. Murry made a draft of his survey, and in 1822, when the deeds were drawn, this draft was referred to in the deeds, but in copying the courses and distances the scrivener mistook the course S. 56° E. 95 6-10 perches for 25 6-10, and so wrote it down in Bowman's deed. The deed was recorded as written, but on production of the original at the trial, in pursuance of notice, it appeared that Bowman, or some one for him, had attempted to correct the mistake, and had blotted out the length of that course.

On behalf of the plaintiff, who claimed under Jacob Kuhns, counsel asked the court to say that the erasure and alteration of the deed of Philip Kuhns to Bowman, if wilfully made, rendered the whole deed a forgery, and the defendants cannot protect themselves under it, or any copy of it on record.

The court admitted that the fraudulent alteration of a deed after delivery avoids it, but said the evidence on which the defendants rested was the record of the deed, which contained no erasure, and that the original deed was introduced by the plaintiff himself. On the ground that the record was legal or sufficient evidence of defendants' title, they refused the instruction asked for.

Although we are not prepared to say that where a deed has

been materially altered after it has been recorded, the record is any better evidence of title than the deed itself, yet we are clearly of opinion that, in the circumstances of this case, there was no error in refusing to affirm the plaintiff's point. The plaintiff's suit was trespass for entering upon unimproved woodland, and the great question in the cause was whether the *locus in quo* was within the lines of his deed. If it was, he had both the constructive possession, which title always draws to itself, and the actual possession, which results from residence upon and cultivation of the tract, of which the woodland was part—but if the *locus in quo* was not within his lines, he had neither the constructive nor the actual possession of it, and could not maintain trespass, whether the defendants had title or not.

In another view the objection taken to defendants' deed was immaterial. If a grantee of land alter or destroy his title-deed, yet his title to the land is not gone. It passed to him by the deed, the deed has performed its office as an instrument of conveyance, and its continued existence is not necessary to the continuance of title in the grantee—but the estate remains in him until it has passed to another by some mode of conveyance recognised by law. It is the instrument which is rendered void, not the estate : 1 Greenl., § 568 ; Withers *v.* Atkinson, 1 Watts 236.

It was not necessary, therefore, that the court should pronounce upon the effect of Bowman's alteration of his deed. The plaintiff did not claim under it, and his own deed was not abridged or affected by what was done. If the eight acres belonged to his half of Philip Kuhns's tract, he had his right of action ; if it did not, he had no right to sue in respect of it whether Bowman had preserved or destroyed his muniment of title.

The essential question in the case, therefore, was a question of fact, and was properly submitted to the jury. All the evidence of acts of ownership upon the debateable land, of claim on one side and of disclaim on the other, as well as of lines and boundaries, was fairly submitted to the jury, and they found against the plaintiff.

But the court is complained of for not instructing the jury that when marked lines on the ground differ from the plot or survey, the lines on the ground must be taken as the true lines of division. This proposition evidently had reference to the experimental lines first run by Murry, but which were abandoned when it was found they would not effect an equal division. Though it be true of official surveys of vacant land, that the lines on the ground constitute the true survey, yet rejected lines prove nothing, and ought to be obliterated. Much more should erroneous lines be rejected that were run in this unofficial, parental effort to divide a tract equally between a son and a son-in-law. If the courses and distances in the deeds made an equal division, which the lines on the ·

[Rifener *v.* Bowman.]

ground did not, the jury had ground for presuming that some of the lines first run were rejected, and those mentioned in the deed were finally adopted. And it was quite competent for them to correct the mistake of distance in one of the courses, as expressed in the deed, by the plot of the survey from which the deeds were drawn, and which they ought to have pursued.

The final objection to the court's ruling is that they refused to give effect to the Statute of Limitations in behalf of the plaintiff's title. He insists that for more than twenty-one years he had used this woodland as farmers ordinarily use woodland adjacent to their farms, and that he had thus acquired title, even though it were not within the lines of his deed. But, according to the doctrine of Ament *v.* Wolf, 9 Casey 331, the plaintiff's failure to reside or cultivate within the lines of the tract to which the woodland belongs, is decisive against his attempt to set up the Statute of Limitations. In Hole *v.* Rittenhouse, 1 Wright 116, it was said to be apparent from all the authorities, that to maintain an actual possession of woodland, as such, it is indispensable that the intruder take actual possession by residence or cultivation of part of the tract to which the woodland belongs. Here the jury have found that the woodland belongs to the tract that was set off to Bowman, and within the lines of that tract the plaintiff does not claim to have ever resided or cultivated. His occasional trespasses, therefore, to take timber, constitute no possession under the statute.

The judgment is affirmed.