## Godding et ux. v. Swanson et ux.

*Alexander, Clark & Stewart,* for plaintiffs.
*Harold S. Hampson,* for defendants.

452

WADE, P. J., December 28, 1950.—George Godding and Anna M. Godding brought this action in ejectment against John Albin Swanson and Esther E. Swanson, claiming that defendants were wrongfully in possession of a tract of eight acres of land in Cherry Grove Township, Warren County, Pa. Plaintiffs began their abstract of title with the will of Anna Deshner Hackathorne, dated April 13, 1935, probated December 3, 1935, which left, inter alia, a larger tract of land which included the disputed tract to her husband, James Edward Hackathorne, for life with the remainder to her children. The life tenant died, and the owners of the remainder deeded their interests in the larger tract by a quitclaim deed to O. M. Borden on September 28, 1937, which deed was recorded on November 15, 1937. The abstract contains a reference of a quitclaim deed from O. M. Borden and Georgia E. Borden to C. J. Cooper and one Mary McBee, dated June 22, 1938, and recorded November 17, 1938. C. J. Cooper, single, and Mary McBee, single, gave a general warranty deed to E. H. Beshlin on November 20, 1940, which deed was recorded October 10, 1942; E. H. Beshlin and Marill E. Beshlin, his wife, gave a special warranty deed, dated October 10, 1942, recorded October 12, 1942, to plaintiffs in this case, covering the larger tract.

Defendants claim title to eight acres, the land in question, by virtue of a tax sale held August 7, 1939, of the larger tract, to W. J. Knupp for the nonpayment of the 1937 taxes. W. J. Knupp made a quitclaim deed of the larger tract to C. J. Cooper on November 3, 1941, which was recorded February 18, 1942. Then C. J. Cooper and Rose Cooper, his wife, made a deed of the disputed eight acres to defendants on June 4, 1942, which deed was recorded June 11, 1942.

The issue in this case is very simple and without any complications whatsoever; it is merely a question of whether or not on June 4, 1942, defendants knew or

had reason to know that their grantors had already conveyed this eight acres, which was included in the larger tract of 57½ acres, when grantors made the deed to E. H. Beshlin on November 29, 1940. This latter deed was not recorded until October 10, 1942, and obviously there was no notice under the recording acts until October 10, 1942, sometime after defendants had received and recorded their deed.

On November 18, 1948, this case was tried before a jury, but, on motion for binding instructions made by defendants, this court took the case from the jury on the basis that plaintiffs had not made out a case, since the record did not show title being out of the Commonwealth or a common source of title. This court took the view that a tax title is a new and inceptive title and does not derive its efficacy from any title of the reputed owner. This court further took the view that the purpose of including the name of a reputed owner in an assessment is merely for the purpose of identification, the same as a warrant number or adjoinders, so that a person desiring to pay his taxes will be led to the identification of the land through the assessment. For example, many tax titles in Pennsylvania are based on assessments to "Unknown", where there are other sufficient means of identification of the land in the assessment. However, the Superior Court on July 15, 1949 (165 Pa. Superior Ct. 193) reversed the case and sent it back for a new trial, holding that there was a common source of title where the assessment was to Anna Deshner Hackathorne and a tax sale was had thereunder, and where there was a conveyance by the heirs of Anna Deshner Hackathorne. In so holding the Superior Court cited California law and placed the basic theory of tax titles on the California law, which makes a tax title no better than the title of the reputed owner.

The case was again tried on July 21, 1950, before a jury which found in favor of plaintiffs on the narrow question of fact as to whether or not defendants knew or should have known of the prior conveyance of their grantor.

During this trial it was discovered for the first time that in the deed from O. M. Borden and Georgia E. Borden, dated June 22, 1938, and recorded November 17, 1938, the transaction had been closed in Attorney S. D. Blackman's office with only C. J. Cooper as grantee, and that subsequently and without authority the name of Mary McBee had been inserted as an additional grantee. At the trial the court held that the deed had been destroyed as to its legal efficacy, but that the estate to the original grantee, C. J. Cooper, had not been destroyed. The effect of the law in this regard is to nullify the deed so that no suits may be brought on its warranties, and deed may not be used as actual evidence of the transfer of title. Of course, such an alteration does not prevent a subsequent holder of the title from showing the nature of the transaction in some other way than by using the deed as an item of evidence. This holding is under the authority of such Pennsylvania cases as Rifener v. Bowman et al. 53 Pa. 313 (1866). The Supreme Court said at page 318:

"If a grantee of land alter or destroy his title-deed, yet his title to the land is not gone. It passed to him by the deed, the deed has performed its office as an instrument of conveyance, and its continued existence is not necessary to the continuance of title in the grantee— but the estate remains in him until it has passed to another by some mode of conveyance recognized by law. It is the instrument which is rendered void, not the estate: 1 Greenl., §568; Withers v. Atkinson, 1 Watts 236."

The subject matter has been discussed in 1 R. C. L. 1004:

"Title does pass and it is not divested by the subsequent alteration, and notwithstanding the unauthorized erasures or interlineations, it is open to the grantee named in the paper to show, by any competent evidence, the passing of title into him."

There is authority for the proposition that although there is an alteration in the deed, and the deed itself may not be adduced as evidence, yet the deed, so far as unaltered, may be used as a memorial of the transaction. 10 R. C. L. 1145 holds:

"Some courts hold that not only is the right which has passed by such an executed instrument unaffected by the kind of destruction of the paper—as it would be unaffected by the physicial obliteration of the paper—but also that the paper itself, eliminating the unauthorized alterations of it, continues to be a memorial of the right or title, and may be adduced in evidence to prove the passing and vesting of such right or title."

The court, following the Pennsylvania law, at the trial did not permit the use of the deed as a memorial of the transaction, but did permit plaintiffs to prove the passing of title to C. J. Cooper on June 22, 1942, by oral testimony. The question now resolves itself as to whether or not there was sufficient proof of this conveyance of June 22, 1942, to C. J. Cooper. For this purpose plaintiffs called O. M. Borden and his wife, Georgia E. Borden, to the stand and they were examined and cross-examined about this transaction. O. M. Borden was first examined about the deed, dated September 28, 1937, and he said he did obtain title to the larger tract of 57½ acres and that he did take possession. Then he was examined and cross-examined concerning his transfer of title to C. J. Cooper on June 22, 1938. He first declared that he no longer owned the 57½ acres of land, and he said: "I sold it to C. J. Cooper".

"Q. So, after you made this verbal contract to sell this 57½ acres, did you, in effect, sell it?

"A. Yes, sir.

"Q. And to whom, so far as you know?

"A. C. J. Cooper."

The following testimony was given by O. M. Borden concerning the transfer of the land to C. J. Cooper:

"Q. Did you do anything to indicate that you were passing title to Mr. Cooper?

"A. Yes, sir.

"Q. And where were you when you did such thing?

"A. Sidney Blackman's office.

"Q. The office of Sidney D. Blackman, attorney in Warren?

"A. Yes, sir.

"Q. Did you receive anything in consideration for the sale of this land to him?

"A. Yes, sir.

"Q. Have you received all of the consideration?

"A. Yes.

"Q. All of the consideration which you contracted for?

"A. That's right.

"Q. I believe you testified you did this sometime in June 1938, is that right?

"A. Right.

"Q. At that time did you retain any right or interest of any nature in this property which you received a deed for from the Hackathorne heirs?

"A. The only stipulation was that there should be a road left into the cemetery. That wasn't reserved for myself but for the ones who wanted to use this cemetery."

Then there followed testimony restating the above, and that possession was transferred:

"Q. At what time or about what time did you give up possession of these 57½ acres?

"A. It was in June 1938.

"Q. Mr. Borden, when was the final consideration paid you by Mr. Cooper?

"A. As I remember it was the day the deed was delivered."

Under this state of the record it is the contention of counsel for defendants: "In other words, the case holds that only by a writing which is duly signed by the grantor can the land owner divest himself of the ownership of land.", and for this proposition cites Thompson on Real Estate, vol. 5, sec. 2802:

"Finally, by the statute of frauds, a feoffment made by livery of seisin only, and not accompanied by an instrument in writing signed by the feoffor, or his agent lawfully authorized in writing, had the effect of creating an estate at will only."

Then counsel concludes:

"It is likewise even clearer that the testimony of the Bordens violated the statute of frauds and should not have gone to the jury for consideration."

The court refers to the case of Rifener v. Bowman, supra, and the citations in Ruling Case Law to show that the title did pass, and if the contention that only an estate at will is created because of no feoffment, then it would be to render nugatory the principles of law above referred to. The transaction is not tainted by fraud or so vitiated that no proof therefore can be offered, but it is one susceptible of proof, and, since the Bordens did testify that they did sell the property and did receive their consideration, and did give up possession, they showed everything that would divest themselves of title and invest C. J. Cooper with title. They even carefully described the reservation of the road to the cemetery. It seems to this court that if such proof is not sufficient, then all titles where there is a prior alteration in a deed would be placed in jeopardy. The purpose of the law is not of a punitive nature, but one merely requiring oral proof. There is even law that

the altered deed itself can be used as a memorial of the transaction as it was in its original state.

At the former trial the testimony of Mary McBee was taken, and she was substantially cross-examined. Since Mary McBee had died before the second trial her testimony was offered at the second trial. Objection was made at the second trial on the ground that "the issues are not the same, there having been added to the pleadings two paragraphs which were not included in the original proceedings, making the subject matter to this case different from what it was in the previous case". This is the objection made by Mr. Hampson at the trial. The court admitted the testimony, citing Henry on Pennsylvania Trial Evidence, sec. 314, page 449, which reads, inter alia: "But so long as the subject matter is the same, the form of the action is unimportant, and the mere fact that in a subsequent suit the action was changed in form from account render to assumpsit or from replevin to assumpsit, or from divorce to orphans' court proceeding is immaterial".

Counsel now objects to this testimony as "not having been identified nor proven according to law". In other words the objection now is that this testimony of Mary McBee was not properly authenticated. Counsel for plaintiffs cited Henry on Pennsylvania Trial Evidence for the proposition that "The party objecting to the evidence should state the reason therefor, and if he fails to do so but objects generally, the admission of the evidence is not ground for reversal, if it is relative for any purpose whatsoever". It would seem that since the objection merely goes to its authenticity as being from the former trial, such an objection is more of a formal nature and now comes too late.

This court is of the opinion that the case turned on a very simple and narrow issue, that of knowledge or lack of knowledge of former transfer, and the jury decided in favor of plaintiffs. This court is also of the

opinion that the transfer from O. M. Borden on June 22, 1938, was properly proven by oral testimony under the law on this subject matter, and that the objection to the authentication of the testimony of a deceased witness came too late.

### Order

And now, to wit, December 28, 1950, it is hereby ordered, adjudged and decreed that the motion for a new trial filed July 31, 1950, be and the same is hereby refused and the rule to show cause granted thereon be and the same is hereby discharged; and it is further ordered, adjudged and decreed that the motion for judgment notwithstanding the verdict be and the same is hereby refused, and the rule to show cause granted thereon be and the same is hereby discharged.