The opinion of the Court was delivered by-
Duncan J.
Divesting it of mere technicality, and considering it on its real merits, the inquiry would be a very simple one : Had David Cooke a legal title ? If he had, did he tender to Henry Cassel, a good and sufficient conveyance, clear of incumbrances ? There are many minor points, which have been much insisted on by the plaintiff in error, and which it is proper to consider:
The amendment, or filing a new declaration. It has often been decided in this Court, that the power of the Courts, under the Act of the 25th of March, 1806, is not confined to *287 mere alterations of form, but, in its terms, embraces every informality, which will “ affect the merits of the cause in controversy.” The alteration was not the substitution of a new cause of action ; and the true criterion is, whether the alteration or proposed amendment, is a new and different matter — another cause of controversy ; or whether it is the same/ contract or injury, and a mere permission to lay it in a manner zvhich the plaintiff considers will best correspond zoith the nature of his complaint, and with his proof, and the merits of his case. Of the latter description was the amendment complained of, — complained of without any just reason. It is one of the cases provided for by the Act; it introduced no new substantive cause of action; it was the assignment of a breach of the same covenant,'on the same instrument, to be covered by the same penalty.
As to the rejection of the evidence, offered by the plaintiff in error, to shew the damage he alleged he had sustained, by not having his title at the time stipulated in the contract, the/ first matter which must strike every one, is, that this is not a question of contract purely executory. It is partly executed, and when a title can be made, it is mainly executed by the vendee, by possession delivered, and uninterrupted enjoyment. And if it were altogether executory, the tender of the conveyance, and payment of the hand money, were concomitant acts. There is no priority in the order of time. The covenants are dependant: the one is not obliged to convey without payment of the purchase money, the other is not bound to pay, unless conveyance be made; and before either could complain of damage from non-performance by the other, he should put himself in an attitude to demand it. Cooke could not bring an action for the purchase money, without tendering a conveyance ; so neither could Cassell for non-delivery of the conveyance, until he tendered the hand money and bond with security for the future payments. It is a principle of natural justice and received law, that if a vendor or vendee wishes the other to observe a contract, he immediately makes his part of the agreement precedent; for he cannot proceed against the other, without an actual performance of the agreement on his part, or a tender and refusal. So that a vendor cannot bring an action for the purchase money, without having executed the conveyance* or offered so to do,' unless the pur *288 chaser has discharged him from doing it; and on the other hand, a purchaser cannot maintain an action for a breach of contract, without having tendered the purchase money. If the plaintiff has sustained a loss, he has not sustained actionable damages ; he could bring no action for their recovery. And as they would not be a weapon with which he could attack his adversary, so they could be no shield of defence against him. It was damnum sine injuria, and, as will be seen in the sequel, was occasioned by his own default. The evidence was properly rejected.
There are nine special errors assigned to the charge of the Court, and their answers to the several points made by the plaintiff in error. In the view of them which this Court has taken, it is unnecessary to consider the second, third, eighth, and ninth. The first is, that George Stuart, from whom the plaintiff deduced his title, had only a life estate under the will of John Stuart, his father, the patentee. The patent was obtained in 1738; the will was executed in 1749,, The cases relied on by the defendant in error, and the argument attempted from the early day in which this will was executed, supplying the omission of words of inheritance, have no relation to the construction of this devise. They depended on the inchoate nature of the rights of testators, — settlement rights and warrant rights, on which no patent had issued, and which, in those times, were considered and treated, as mere personals, sold by administrators without an order of the Orphans’ Court, a mere surrender of possession, or conveyed without any word of inheritance, delivered over by indorsement on the warrant. But here there was a perfect grant, a strict legal title in the testator when he made his will, and its disposition must be governed by the general rules and law of devises, with respect to real estate. This will, though not very perspicuous in expression, plainly manifests the general objects and intention of the testator. It has little relation to French v. M'-Ilhenny, in which there was diversity of opinion on the Bench ; which was considered by the bar, as a departure from the general law, and which one of the Judges in the majority, Judge Brackenridge, announced as a kind of declaration of independence of all English decisions on the doctrine of limitations in wills of real estate; but the other Judge, Ye ates, protested against, *289 such a conclusion. See Clayton v. Clayton, 3 Binn. 490. In all the decisions to be found in our own books of reports, the authority is acknowledged. On a subject in which every man has an interest, involving the rights of all men who hold real estates, it would be dangerous to cast off all authority and settled rules of construction, which have, by adoption and long use,.become with us rules of property ; and if there is any certainty in this branch of the law, it is certain, that a devise of lands, per se, without words of restriction, and where there are no words denoting the general right, property, interest, or estate of the testator, or words of inheritance, does not carry the fee. The conclusion of the law is not, that where there is a devise of land, a plantation, a house, without more, a fee is devised ; a fee is intended, and one is therefore devised.’ But it is equally certain, that if an intention to devise a fee is evident, and clearly manifested by the general scope of the will, taking into view all the circumstances and clauses in the whole will, uniting them together to collect the testator’s intention, it will be construed a fee. It is not material, what words are used, whether technical or not, the meaning and intention being thus collected from the words, or necessary implication. As the Statute of Wills requires no formal, technical set of words, to give a fee, when by a sound construction, it is once ascertained (not by a conjecture, that because the testator has not added restrictive words, he designed an unlimited and absolute disposition of his whole interest) that he intended a fee, it is the duty of Judges so to construe the will. These rules being our guides, let us examine this will. It is short, and I will read the prefatory and devising clauses. [His Honour here read the will.] It is declared by the testator, that he intends to dispose of all his worldly estate, out and out. This will not, of itself, be sufficient to give a fee, but is always carried down to the devising clauses, to shew the intention. Every testator has, in his own mind, formed some general plan, though too often his intention is barred, by the ignorance of the scrivener who draws the will. The plan of this testator, (and whatever difficulties may strike us, on reading cursorily detached passages and separate clauses of his will, yet in putting the whole together and taking all into one view, they disappear, and leave the mind free from all doubt) was, that his only *290 son should hold his real, and his wife and his two daughters, his personal estate ; — a very common mode of disposition,— the land to the males, the personal estate to the females. His second object was, a provision for his wife, and all his children, during their infancy. To effect this, he directs that his wife shall enjoy the whole plantation, until George arrives at the age of twenty-one ; and that after that time, she shall enjoy, during her life or widowhood, the one half. The third object was, a provision for the case of either of his children dying under age ; the part of him or her so dying, should go over, (still keeping the personal estate in the female line,) to the survivor ; for if one of the daughters died before twenty-one, her part was to go to her sister; if George died under twenty-one, his part was limited over to his sisters ; to fall to his two daughters. It is a devise of the plantation to George, and if he dies before twenty-one, then to his sisters. If George only took an estate for life, his sisters would take at his death, even from his issue, though he died at the age of four-score, against the direct limitation over to them, which is confined to George’s dying under twenty-one. This cannot be the true construction of the will. “ If George be removed by death before the age of twenty-one, then to his two daughters;” this shews a clear intention to give a fee, for if he lived till twenty-one, he might then dispose of it himself; if he died before, he could not, and in that event, the testator disposed of it. If George was only tenant for life, the time of his death was immaterial to the devise over; but limiting it over only on the contingency of his dying in his minority, shews he intended to give him an absolute estate in fee, which he might dispose of, if he came of age ; and unless he came of age, so that He could dispose of it, he intended it should go to his daughters. So is the opinion of Saunders, in Purefoy v. Rogers, 2 Saund. 388, which has been followed in many cases. Tomkins v. Tomkins, in Chancery, cited in Goodtitle v. Whitby, 1 Burr. 234. The whole doctrine of the effect of the words, if he should die under twenty-one, is fully stated in Bramstones’ Lessee v. Holiday, 1 W. Bl. 335, 3 Burr. 1618, and clearly proves, that a giving over, on a dying before twenty-one, shews an intention that if the party attain twenty-one, he shall have a fee simple. And this case is approved of by President Siiippen, *291 in Busby v. Busby, 1 Dall. 226, as a leading one, on the general doctrine of devise by necessary implication. Let any man ask himself this question, what did the testator mean, when he said, if my son George be removed by death, before he be of age, his part to fall to my two daughters ? His answer most assuredly would be — he intended by these words, that if he arrived at that age, he should have the power of disposing of it, as he pleased, and if he died without disposition, leaving heirs, it should descend to them ; that the limitation over, depended on one contingency — his death within age.' This is not a construction by conjecture, but one arising from the words themselves, on the most necessary implication. It was not the intention of the testator, if any of his daughters died after twenty-one, that her share of the personal estate should go over to her sister, and yet the limitation over, is in the same words. This disposes of the second error, specially assigned. The question of limitation never could arise, as it was the opinion of the Court, and very properly too, that George took an estate in fee, and that independent of all other considerations, the death of George, and the length of possession, the plaintiff below shewed a good title in himself, ab initio, under the conveyance from George. It is likewise an answer to the eighth specific error. For when George died, or whether he was then alive, was totally irrelevant ; it not being pretended, that he died before twenty-one.
The fourth error. The receipts were legal discharges of the incumbrances. It was not necessary there should be formal releases by deed; any written evidence of payment would be sufficient. If it had been verbal, another question might have arisen. But on payment of the purchase money, the vendee might have required the delivery of these papers : they were muniments of his title. The Court decided, very properly, that the defendants ought not to retain the amount of the legacies out of the purchase money, inasmuch as there was satisfactory written evidence of the discharge of these incumbrances.
The fifth error, as far as I can comprehend it, is, that Cooke had mislaid one of his mesne conveyances. If it had been lost, it would not follow, that Cassell should hold the land without paying for it. The evidence of its existence and loss, might have been supplied by a bill in perpetuam rei memoriam. Cas *292 sell never put himself in a state tp demand the title papers nor the conveyance. When the conveyance was tendered, Cooke had found this lost deed, and was able to give a good title, without any flaw or defect in the chain of conveyances.
The sixth error. It is with reluctance the Court sustain this objection ; for the difficulty is removed by the death of the grantor’s wife, and the execution of the deed was proved by other evidence than the acknowledgment. But she was living, when the action was brought; and the plaintiff’s right to recover, must be complete then, and cannot be perfected by any subsequent acts or events. It follows, that if the acknowledgment and separate examination of the wife was not by competent authority, the plaintiff must fail; for he had not tendered a good and sufficient conveyance, clear of all incumbrances. The evidence of this examination and acknowledgment, is the certificate of the Clerk of the Court of Washington county, in the State of Maryland, that A. M. Waugh and John Hersley were justices of the peace of that county, certified under his official seal; and evidence, that Cooke and his wife were then residents in that county. To support this acknowledgment, The Lessee of M'Intire v. Ward, 5 Binn. 296, has béen relied on. Without-questioning the solidity of the reasons on which the acknowledgment in that case was supported, it is sufficient to say, it was on a ground very different from the evidence or state of this acknowledgment. That was accompanied with evidence that the two Justices before whom it was taken, were principal magistrates, and Justices of the Common Pleas of Baltimore county ; and that in 1779, when taken, no superior officers or magistrates, were in that county, and a certificate to that effect from the the Department of State. There is no such evidence in this case. These gentlemen were not Justices of the Court of Common Pleas of Washington county, when this acknowledgment was taken. They were not, as in the former case, Judges of any Court of record; and it- is not so, that there was no superior judicial magistrate in Washington county. The whole constitution of the judiciary .of Maryland has been changed since 1779. The justices of the pea.ce, are mere' petty magistrates, holding a very subordinate, though a respectable rank. They are not Judges of record. They have a superior, because there is a superior county ¡magistracy; a superior judicial magistracy. The *293 President of the Court, it is well known, resides in the county. The plaintiff below did not produce, he could not produce any official, or other proof, that in Washington county there was no magistrate or peace officer, superior to these two Justices. This was the turning point in M'Intire v. Ward, the Chief Justice deciding it on that reason, and that alone. He observes, “ that had there been a chief magistrate or officer in Baltimore county, and this deed had not been acknowledged before him, the objection would have been fatal; but where several are equal, there can be no chief. In such case a literal compliance with the law is impossible, but its meaning is satisfied, when the person who takes the acknowledgment has no superior.” The conveyance tendered, conforms to the article in other respects. It was a good and sufficient conveyance, clear of all incumbrances, but it was no bar of the wife’s right of dower. The action is an action at law, for the recovery of the money due on the contract, by the medium of a penalty ; and before the plaintiff could demand this money, or sue for the penalty, or for the money due in an action of covenant, it behoved him to tender a good and sufficient conveyance. It is different from debt on a bond, which is of itself, at law, a consideration, and where the obligee must go into equity for relief, if the consideration has failed, or contract has not been complied with. But here the tender of a legal conveyance must precede the call for the money. It is a condition precedent; it is a sine qua non, and must be performed before action brought. Here the Court erred, and for that reason alone, the judgment is reversed.
7th error. Taking the general charge of the Court, in connection with the answer to the proposition of the plaintiff in error, the law was correctly stated. If performance on the day is dispensed with by the purchaser — if he is not prepared to pay at that day — desires indulgence — puts off payment from day to day — procrastinates, and at the same time enjoys the full benefit of the contract, it may be justly said of such a purchaser, that he prevented the vendor from tendering the conveyance at the day, or dispensed with it. Here he retained the possession, went on with partial payment near a year after the conveyance should in strictness have been offered, acted as on a subsisting, continuing, and binding *294 contract. Even at law, if the party himself is the cause why a condition precedent has not been performed, he shall not " take advantage of it; but in equity, if the purchaser receive and hold the possession, and when the conveyance ought to be executed, does not object to the delay, he cannot afterwards insist on it, as a bar to a performance in specie. If he means to insist on the proper time, he should immediately, when the time has elapsed, insist upon the re-payment of his money, arid offer to surrender the possession; but very different was the course of the plaintiff in error. It may be true as a general position, that where the price is unreasonable or inadequate, or the contract is in other respects Inequitable, equity will not assist either party. How far this would apply to the delusive state of the day when this contract was entered into, when men of sanguine tempers, observing the daily rise of the price of lands, purchased as if it were still to continue to rise, while others with more sobriety, calculated differently and sold, it is not necessary to decide, though I cannot see, where no undue advantage was taken, that such a contract could be called unconscientious or why chancery should refuse its aid, unless indeed where the vendor has trifled with his contract, and been, guilty of gross negligence, or shown a backwardness in performing his contract. The reason of this chancery principle, seems to me to depend on the fact of the inadequacy or extravagance of the price of the particular tract sold, evidencing, per se, an advantage taken either of the ignorance or necessity of the contracting party, and not on a general elevation or depression of real estate, in the part of the country where the particular estate is situated. We have all experienced these fluctuations. Lands without an adequate cause, rose beyond their intrinsic value, and as suddenly fell below their real value. I should doubt very much the policy of withholding, in either case, the equitable power of chancery, to enforce the contract, ánd rather incline to think the expressions in Sugden, are to be construed as relating to the price of the particular estate contracted for, and not to the general state of the selling price of property at the time when the contract was entered into ; for the rule must be applied to all sales, as well those where the price is extravagant, as where it is inadequate. It is apprehended that the prin *295 ciple in practice, has not been extended to any sale, unless where there is inadequacy or extravagance in the sum agreed upon, comparing it with the usual current price of estates of the same nature, in the same neighbourhood or district, at the time of the contract. Nothing could have been left more fairly to the jury than this was. Whether the vendor had trifled, or been guilty of gross negligence, or had shewn a backwardness to perform, or whether the delay'was occasioned by the purchaser, were facts for the consideration of the jury, were so submitted to them, and they were satisfied ; and the evidence was sufficient to satisfy any reasonable mind, that plaintiff in error dispensed with performance at the time, because he was not ready to perform his part of the contract j that on the time elapsing, instead of insisting on this as an abandonment, surrendering the contract, and giving up the possession, he waived it, and continued to act upon the .contract as a binding and continuing one, long after it had elapsed, by the most unequivocal act, that of payment of the purchase money. This would, both at law and in equity, prevent him from rescinding the contract on that pretence now.
The 8th and 9th specifications of errors, serve to swell the number, without adding force to the objections. The Court did, with accuracy, apply the facts to the legal points ; nor do I observe any mistake in the matter alleged to be irrelevant. If there was such irrelevant matter used as mere illustrations of the relevant matter, — if all was right as to the matter in issue, misconception of some illustration, some abstract opinion, having no relation to the matter in hand, can be no ground to reverse a judgment. But on account of the defect of the acknowledgment, and separate examination of the wife of the grantor, there being no evidence to shew authority in these officers of Maryland, before whom it was said to have been taken, by the laws of Pennsylvania to take it, the judgment is reversed. '
Judgment reversed, and a venire faciás de novo awarded.