[PHILADELPHIA, JANUARY 21, 1837.]

## YOHE *against* ROBERTSON and Another.

### IN ERROR. -

1. The plaintiffs declared in assumpsit on a promissory note drawn by the defendant in their favour. On the trial it appeared that the plaintiffs and defendant were dealers in lottery tickets, and some evidence had been given to show that the consideration of the note, either in whole or in part, was the price of certain tickets sold by the plaintiffs to the defendant: *Held*, that it was not error to allow the plaintiffs' counsel, after the evidence had been closed, and the defendant's counsel had concluded his address to the jury, to file additional counts for goods sold and delivered, and money lent and advanced.

2. Lottery tickets come under the denomination of "goods, wares, and merchandise;" and the price or value of them, if the sale is not illegal, may be recovered on the common count for goods sold and delivered.

ERROR to the District Court for the City and County of Philadelphia, to remove the record of an action on the case brought bv Archibald Robertson and George P. Little, against George Yohe.

The plaintiffs declared in *assumpsit* on a promissory note drawn by the defendant in favour of the plaintiffs, for $276, dated Philadelphia, February 14th, 1836, and payable on demand. The defendant pleaded *non assumpsit*, and payment with leave, &c.

On the trial before STROUD, J. on the 18th day of February, 1836, the plaintiffs proved the hand-writing of the defendant, and gave the note in evidence.

The defendant's counsel then examined one Daniel M'Intyre, who testified as follows:

"The plaintiffs were lottery brokers, and kept their office in the Shakespeare Buildings; the office was for the sale of foreign lottery tickets: it was the only office at which foreign lottery tickets could be furnished. I was in the employ of Yeates and M'Intyre; they sold Union Canal tickets only; the Union Canal tickets were furnished from their office, which was also in the Shakespeare Buildings. I was frequently in Robertson and Little's office : their general mode was to take due bills similar to this, (the note given in evidence) for all tickets sold by them. The checks I received from Yohe were for Union Canal tickets; he never gave us a due bill for his Union Canal tickets." Being examined on the part of the plaintiffs, he further

said, " Robertson and Little also sold Union Canal tickets; Yohe dealt in lottery tickets."

The defendant then produced one Charles Rogers, who testified as follows: " I was in the employ of the plaintiffs in February, 1831. This note is filled up in my hand-writing;" and having produced a certain book, which he was required by a *subpœna duces tecum* to produce, he further testified, " this is the plaintiffs' sale book for the sale of foreign lottery tickets, this entry in the book— viz.

.' Sale Book—New York Extra 4.

1831.
February 14th,        -        44 tickets=Yohe—$176.'

under date of 14th of February, 1831, is in my handwriting, and appears to be for the sale of forty-four tickets, in New York Lottery, extra 4, to Yohe, amounting to $176. I do not know, nor can I say that it forms a part of the consideration of this note. I should think from the similarity of the date of the entry and the date of the note, that it does; and it is impossible at this distance of time, and after so many transactions with Mr. Yohe, to have any recollection about it. I do not know of my own knowledge, that there were' any money transactions between the plaintiffs and the defendant; there might have been; the plaintiffs often lent money to their customers; transactions like these in this entry, occurred daily; there are several entries of similar amount ($176) in the book against defendant. This book exhibits nothing but sales of foreign lottery tickets; I cannot say what was the consideration of the remaining one hundred dollars of the note; we kept no ledger account with defendants, since I have been with the plaintiffs; I presume the $176 dollars of this note was for New York lottery tickets, but as I said before, I have no recollection on the subject; I judge from the entry merely." Being cross-examined, he said, " the plaintiffs also dealt in Union Canal lottery tickets; we often supplied Mr. Yohe with Union Canal tickets; we took due bills like this for all kinds of tickets; many entries occur in the books of sales of tickets, charged without the names of the purchasers; I have no other reason for my supposition as to the consideration of the $176, than the similarity of dates and the filling up of the note and entry in the book being in my handwriting; balances of previous sales were frequently added and included in one due bill. There do not appear to be any charges for foreign tickets against the defendant which would make up the amount of this note; loans of cash were not entered, but a memorandum was made on a slip of paper placed in the drawer, and at the next settlement with the customer, our practice was to include it in the note or due bill. I think in 1834, I had charge of the collection of several notes of the plaintiffs', this amongst them. I left word for the defendant to call at our office—he did, I asked him to pay the

note, he was exceedingly abusive, used very harsh language, said he would never pay it; he did not deny the note—I think it was shown to him, but am not certain; he did not allege any want of consideration or illegality in the transaction." Being re-examined on the part of the defendant, the following question was put to him, viz. "can you from recollection name any sale of Union Canal tickets, the amount and day of sale to the defendant?" to which he answered, "Yohe's name appears in several entries as a purchaser of Union Canal tickets, but I cannot pretend to recollect the dates or amounts of any such sale." And being further interrogated, the witness said, "I cannot from recollection say I ever charged Mr. Yohe with any Union Canal tickets."

The defendant then produced John Ely, Jr., who testified as follows, viz. "I am one of the house of Yates & M'Intyre, our office was exclusively for the sale of Union Canal tickets, we sold no other kind; there was no other office for the sale of foreign lottery tickets, but Robertson & Little's : the brokers were supplied with their foreign lottery tickets by Robertson & Little. I have seen them have such due bills as these."

The testimony on the part of the defendant being closed, the plaintiffs' counsel summed up his case, and the defendant's counsel proceeded to address the court and jury, and argued "that the plaintiffs could not recover, the contract being for an illegal consideration, and requested the judge so to charge the jury ; and further requested the judge to charge the jury, that if even one part of the note was given for a legal consideration, the other part being illegal, the whole note was void, and the verdict must be for the defendant."

The counsel for the defendant having concluded his address to the jury, the plaintiffs' counsel presented to the judge three additional counts in *assumpsit*, viz. one for goods sold and delivered, and the others for money lent and advanced; to which the counsel for the defendant objected, but the learned judge delivered his opinion "that he could not prevent the plaintiffs from filing the counts, it being a right given to them by law, over which he had no direction," —to which opinion the counsel for the defendant excepted.

The counsel for the plaintiffs having concluded his address to the jury, the judge charged them as follows.

"The promissory note given in evidence, on its face imports to have been given for a valuable consideration; and from the nature of this instrument, this is sufficient evidence of that fact, until disproved by the defendant, which might have been done in this case, as the suit is between the original parties to this note. The first inquiry for you then is, has the defendant proved that it was not given for a legal consideration? His defence is, that the consideration was the price of foreign lottery tickets. If from the evidence you are satisfied that this was so, for the whole amount of $276,

(Yohe *v.* Robertson.)

your verdict should be for the defendant; and if you think that any part of the sum was for foreign lottery tickets, then the plaintiffs cannot recover on this note. They have however added, a few minutes since, other counts, one of which is for goods sold and delivered; and some loose evidence has been given of purchases of Union Canal lottery tickets by the defendant of the plaintiffs. If you can apply this evidence to such a purchase, you may find a corresponding part of the debt claimed by the plaintiffs, as due under this count."

The jury found for the plaintiffs the whole amount of their demand.

In this court the following errors were assigned.

1. " That the judge erred in permitting the plaintiffs below to file he three additional counts, changing their original cause of action.

2. That the judge erred in not charging the jury that the defendant having impeached the original consideration of the note, and shown it to be for an illegal consideration, the plaintiffs could not recover.

3. That the judge erred in charging the jury that the plaintiffs might recover on *the count for "goods sold and delivered."*

4. That the judge erred in charging the jury that there was some loose evidence of a purchase of Union Canal tickets by the defendant; and for that amount, the plaintiffs might recover under the count for goods sold and delivered.

5. That the judge erred in charging the jury that there was some loose evidence of a purchase of Union Canal lottery tickets by the defendant of plaintiffs, and if they could apply this evidence to such a purchase, they might find a corresponding part of the debt claimed by the plaintiffs as due under the count for goods sold and delivered, when in fact there was no evidence of such a purchase.

6. That the judge erred in not charging the jury that there was no evidence of any goods sold and delivered, and that he ought not to have left the jury to draw such an inference, as that of a sale, when there was no fact to warrant it."

Mr. *Phillips,* for the plaintiffs in error, cited *The Farmers' and Mechanics' Bank* v. *Israel,* (6 *Serg. & Rawle,* 273.)    *Tryon* v. *Miller,* (1 *Wharton's Rep.* 17.)

Mr. *Haly,* contra, cited *Tilghman* v. *Coxe,* (1 *Wharton's Rep.* 287.)

The opinion of the court was delivered by

KENNEDY, J.—The Court below, upon the trial of this cause, after the evidence had been closed on both sides, and after the arguments of the counsel had been delivered to it and the jury, permitted the plaintiffs below, to amend their declaration or statement, by filing three new counts in *indebitatus assumpsit;* one for goods sold and delivered, and the other two, for money lent, &c.; which was

(Yohe v. Robertson.)

objected to by the defendant's counsel, and this is assigned as the first error.

If the filing of the additional counts went only to remove an objection of informality to the recovery of the plaintiffs and did not introduce any new cause of action, then I apprehend, that under the sixth section of the act of 1806, the Court was bound to allow the amendment. The words of the section as to this particular, are, " nor any plaintiff nonsuited for *informality* in any statement or declaration filed; but when in the opinion of the Court, such informality will affect the merits of the cause in controversy, the plaintiff shall be permitted to amend his declaration or statement, *on* or before the *trial* of the cause; and if by such alteration or amendment, the adverse party is taken by surprise, the trial shall be postponed until the next court." · The amendment complained of here, must be considered as having been allowed within the time prescribed by the act, though perhaps done near to the close of the last hour. It was after the trial had been commenced, but being before the Court had charged the jury in regard to the law of the case, and before any verdict was made or ready to be delivered by the jury, it was certainly done before the close of the trial of the cause, and must therefore have been done *on* the trial of it; which brings it, as to time, within the express terms of the act.

The remaining question growing out of this error is: Did the amendment introduce any new cause of action, which had no connection with the note declared on? Because if it did not, then according to the settled law on this subject, there was no error committed by the Court below, in allowing the amendment; see *Cassell* v. *Cooke*, (8 *Serg. & Rawle*, 268.) The declaration or statement, filed by the plaintiffs at first, was upon a promissory note, drawn by the defendant in favour of the plaintiffs, for the payment of two hundred and seventy-six dollars, on demand, bearing date the 14th of February, 1831. On the trial of the cause, the execution of the note by the defendant below, was incontrovertibly proved; but then he resisted the payment of it on the ground that it was given for an illegal consideration; and adduced evidence showing a sale, on the same date of the note, of New York lottery tickets by the plaintiffs to the defendant, amounting in price, to one hundred and seventy-six dollars, with a view of showing that they formed a part, if not the whole, of the consideration received by him for the note. There was also evidence given, showing that the defendant had bought Union Canal lottery tickets of this state, of the plaintiffs frequently; that he was a dealer in lottery tickets; and that the plaintiffs were in the practice of advancing money to their customers: this was given by the plaintiffs for the purpose of inducing the jury to believe that the note was, as the plaintiffs alleged, in fact given for Union Canal lottery tickets, and cash lent and advanced, and not for New York lottery tickets; the sale of which latter tickets being pro-

(Yohe *v.* Robertson.)

hibited by law, within this state, would therefore, had it been shown to the conviction of the jury, that the note was given for them, have most clearly avoided it. The evidence however, in regard to the real consideration of the note, was somewhat obscure; but upon the evidence given, the court left it to the jury to decide what was the true consideration, and if they found that the note was given for New York lottery tickets, then instructed them that their verdict ought to be for the defendant. The inquiry of the defendant on the trial, into the consideration of the note, seems to have given rise to the notion of the counsel for the plaintiffs, that it might be proper to file the additional counts, so as to embrace what they alleged, was their original claim against the defendant, and the true consideration of the note. Under this view of the matter, which seems not to be inconsistent with the evidence, and the nature of the controversy between the parties, so far as it can be ascertained from the evidence, it cannot be said with any propriety, that the amendment introduced " a new and different matter—another cause of controversy," as Mr. Justice Duncan calls it in *Cassell* v. *Cooke.* They are in reality, the same claims that the note is alleged to have been given for, that are set forth in the additional counts: and it is clear, that if the note were taken to secure the payment of the price of the Union Canal lottery tickets, sold and delivered, and money lent by the plaintiffs to the defendant, the taking of it did not extinguish the original contracts for the sale of the tickets and the money lent, as long as the plaintiffs continued to hold and retain the note. The tickets therefore might be declared for, as goods sold and delivered ; and the money lent and advanced, be embraced in the money-counts. If the defendant had been taken by surprise, by the allowance of the amendment, he had a right to have had the jury then trying the cause discharged, and to have had it continued to the next court for trial; which the Court no doubt, would have granted, had he only applied for it.

I will here take occasion to observe further, that the act of 1806, in requiring amendments to be allowed, has not gone as far in regard to the *time*, at which they shall be allowed by the Court, as has been done in England, under the authority and principles of the common law. The courts there have, after compelling the plaintiff to take a nonsuit on the trial of his cause, on account of a variance between the proof offered in support of his cause of action, and the statement of it as set forth in his declaration or bill of particulars, taken the nonsuit off afterwards, and permitted him to amend his declaration or bill of particulars, so as to make it comport with the proof of his case. See *Holland* v. *Hopkins,* (2 *Bos. & Pull.* 243.) *Halhead* v. *Abrahams,* (3 *Taunt,* 81.) *Williams* v. *Pratt,* (5 *Barn. & Ald.* 896 ; S. C. 7 *Eng. Com. L.* 293.) So after a trial and verdict in favour of the plaintiff, for a sum of money in damages, that appeared to be justly due to him, but much more than the amount

(Yohe *v.* Robertson.)

of the damages laid in his declaration, he has been allowed to amend, by increasing the damages to the amount found by the jury, upon his consenting that the verdict should be set aside, and a new trial granted. *Tomlinson* v. *Blacksmith*, (7 *Term Rep.* 128.) Also after a trial and verdict for the plaintiff, the defendant has been allowed to amend his plea, and to have a new trial on payment of the costs. *Storer* v. *Gordon*, (2 *Chitty Rep.* 27; S. C. 18 *Eng. Com. L.* 237.) And I do not know that there is any law here to prevent courts from going as far in allowing amendments as they have gone in England. But then since the act of 1806, it is no longer a mere matter of will or discretion with the courts here, whether they will allow the amendments or not, if applied for on or before the trial of the cause; down to this period, the act has made it the imperious duty of the courts to allow all matters of informality to be amended in the declaration, statement, or plea, that in the opinion of the court, would affect the merits of the cause in controversy: and if refused, when it ought to be allowed, according to the requisitions of the act, it will be such error as may be corrected upon writ of error. But amendments applied for in like matters, after the trial or verdict of the jury has been given, are only grantable at the discretion of the court, where the trial has been had; and whether allowed or refused, cannot be made the subject of revision and correction upon a writ of error.

The second error assigned is, "that the Judge erred in not charging the jury, that the defendant having impeached the original consideration of the note, and shown it to be for an illegal consideration, the plaintiff could not recover." Now it would certainly have been error, to have charged the jury in this manner; because it would have been assuming the fact, that the consideration for which the note was given, was the New York lottery tickets, instead of leaving it as a question to be decided by the jury, whose peculiar province it was, to find upon what consideration the note was given, and whether it was given for the New York lottery tickets; which the court told the jury, if it were so, was an illegal consideration. And although there was pretty strong evidence given, going to show that one hundred and seventy-six dollars of the note were the price of New York lottery tickets, sold and delivered by the plaintiffs to the defendant, yet this evidence was not direct and positive; but consisted of circumstances, which if admitted to be true, did not necessarily require that the jury should draw that conclusion from them; though I must confess, that to my mind, it appears to have been the most reasonable, under a full view of all the evidence as we have it. But still the Judge left this matter to the jury in a way, which cannot be considered exceptionable, by telling them, that if they were satisfied from the evidence, that the note was given upon the sale of foreign lottery tickets, their verdict ought to be for the defendant.

(Yohe *v.* Robertson.)

The four remaining errors have reference to the charge of the Court, concerning the Union Canal lottery tickets; but we can perceive no error therein whatever. There was certainly "some loose evidence," as the Judge says, given, which tended to prove the sale of Union Canal lottery tickets by the plaintiffs to the defendant. And the Judge left it to the jury to decide, whether the plaintiffs were entitled to recover the price of them or not; and if they were, then he told the jury, that they might allow it under the count for goods sold and delivered. It is however objected that the lottery tickets are not goods: but this objection, we think, cannot avail; for although they may not be goods in the popular sense, yet the count for goods sold, embraces also "wares and merchandizes, sold and delivered;" and that lottery tickets are treated, sold and delivered as such daily, to a great extent, must be admitted. Any thing made the subject of traffic, and sold as lottery tickets usually are, the right of property in which, passes by the mere delivery thereof, by the seller to the buyer, may very properly be considered as coming under the denomination of "goods, wares, and merchandizes."

The Judgment is affirmed.